**UNITED STATES DISTRICT COURT**
**IN AND FOR THE**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KENNETH I. TOOTELL, JR., ) | |
|     Plaintiff ) | |
| ) | |
| VS. ) | CIVIL ACTION NO. 04-11813 JLT |
| ) | |
| HAMILTON M. SPORBORG, D.D.S., ) | |
|     Defendant ) | |

## MOTION OF THE DEFENDANT, HAMILTON M. SPORBORG, D.D.S., FOR MEDICAL MALPRACTICE TRIBUNAL HEARING PURSUANT TO MASSACHUSETTS GENERAL LAWS CHAPTER 231 SECTION 60B

Now comes the defendant, Hamilton M. Sporborg, D.D.S., and through counsel moves that this Honorable Court refer this matter to State Superior Court for a hearing before a medical malpractice tribunal as required by Massachusetts General Laws Chapter 231 Section 60B. As grounds for this motion, counsel for the defendant states that Chapter 231 Section 60B requires every action for alleged medical malpractice commenced after January 1, 1976 be screened by the statutory tribunal. The statute specifically states:

> Every action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth under the provisions of section two of chapter one hundred and twelve and an attorney authorized to practice law in the commonwealth, at which hearing the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result.
>
> [text omitted].
>
> Each such action for malpractice shall be heard by said tribunal within fifteen days after the defendant's answer has been filed. [text omitted].
>
> If a finding is made for the defendant or defendants in the case the plaintiff may pursue the claim through the usual judicial process only upon filing bond in the amount of six thousand dollars in the aggregate secured by cash or its equivalent with the clerk of the court in which the case is pending, payable to the defendant or defendants in the case for costs assessed, including witness

and experts fees and attorneys fees if the plaintiff does not prevail in the final judgment. Said single justice may, within his discretion, increase the amount of the bond required to be filed. If said bond is not posted within thirty days of the tribunal's finding the action shall be dismissed. Upon motion filed by the plaintiff, and a determination by the court that the plaintiff is indigent said justice may reduce the amount of the bond but may not eliminate the requirement thereof.

For the purposes of this section, a provider of health care shall mean a person, corporation, facility or institution licensed by the commonwealth to provide health care or professional services as a physician, hospital, clinic or nursing home, dentist, registered or licensed nurse, optometrist, podiatrist, chiropractor, physical therapist, psychologist, or acupuncturist, or an officer, employee or agent thereof acting in the course and scope of his employment....

Mass. Gen. L. c. 231 §60B. Pursuant to Massachusetts statute, Dr. Sporborg is a provider of healthcare (a dentist) and is entitled to have this matter presented to a medical malpractice tribunal. Accordingly, the defendant respectfully requests that this matter be referred to the State Superior Court within fifteen (15) days of the Answer to plaintiffs' complaint having been filed.

In the case of *Feinstein v. Massachusetts General Hospital*, decided March 10, 1981, the United States Court of Appeals for the First Circuit held that the Rules of Decision Act, 28 U.S.C. §1652, and the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) require a Federal District Court sitting in diversity to refer malpractice actions against a health provider arising under Massachusetts law to a medical malpractice tribunal convened pursuant to Massachusetts General Laws Chapter 231 Section 60B. A copy of the *Feinstein* decision is attached hereto. For all the reasons contained therein, counsel for Dr. Sporborg requests that this matter be transferred to the Superior Court for the convening of a medical malpractice tribunal pursuant to Massachusetts law. The tribunal process is exclusively a creature of the Massachusetts legislature, and all issues relating to the offers of proof and filing of bonds are reserved by statute to the judge who convenes the tribunal.

WHEREFORE, all the reasons set forth above, counsel for the defendant, Hamilton M.

Sporborg, D.D.S., requests that this motion be **ALLOWED** and that the above captioned matter be transferred to the State Superior Court for the convening of a medical malpractice tribunal.

                                            Respectfully submitted,

Kevin C. Reidy, B.B.O. No. 567760
Attorney for Defendant, Hamilton M. Sporborg, D.D.S.
MARTIN, MAGNUSON, McCARTHY & KENNEY
101 Merrimac Street
Boston, MA 02114
(617) 227-3240

## CERTIFICATE OF SERVICE

I, Kevin C. Reidy, attorney for defendant, hereby certify that on the 21st day of December, 2004, I served the within *Motion* upon all counsel of record by mailing a copy, postage prepaid, to Anthony R. Bott, Esq., Anthony R. Bott, P.C., Eight Beach Road, Post Office Box 1137, East Orleans, MA 02643.

Kevin C. Reidy, B.B.O. No. 567760
Attorney for Defendant,
Hamilton M. Sporborg, D.D.S.
MARTIN, MAGNUSON, McCARTHY & KENNEY
101 Merrimac Street
Boston, MA 02114
(617) 227-3240



643 F.2d 880  
643 F.2d 880  
**(Cite as: 643 F.2d 880)**

FOR EDUCATIONAL USE ONLY

Page 1

United States Court of Appeals,  
First Circuit.

Jerome FEINSTEIN, Plaintiff-Appellant,  
v.  
MASSACHUSETTS GENERAL HOSPITAL,  
Defendant-Appellee.

No. 80-1283.

Argued Sept. 5, 1980.  
Decided March 10, 1981.

Plaintiff, a citizen of Rhode Island, brought malpractice action on ground that he contracted hepatitis as a result of receiving a transfusion of contaminated blood due to negligence of defendant, a Massachusetts hospital. The United States District Court for the District of Massachusetts, Walter Jay Skinner, J., 489 F.Supp. 419, granted defendant's motion to refer case to a medical malpractice panel, and plaintiff appealed. The Court of Appeals, Keeton, District Judge, sitting by designation, held that the Rules of Decision Act and the Erie doctrine require a federal district court sitting in diversity to refer "an action for malpractice, error or mistake against a provider of health care" arising under Massachusetts statute to a medical malpractice tribunal and, further, to dismiss action when, after hearing, tribunal determines that plaintiff's evidence is insufficient to raise a legitimate claim of liability and plaintiff failed to file a bond within 30 days as required by statute.

Affirmed.

West Headnotes  
**[1] Federal Courts ⚫428**  
170Bk428 Most Cited Cases  
(Formerly 170Bk431)  
The Rules of Decision Act and the *Erie* doctrine require a federal district court sitting in diversity to refer "an action for malpractice, error or mistake against a provider of health care" arising under Massachusetts statute to a medical malpractice tribunal and, further, to dismiss action when, after hearing, tribunal determines that plaintiff's evidence is insufficient to raise a legitimate claim of liability and plaintiff failed to file a bond within 30 days as required by statute. M.G.L.A. c. 231, § 60B; 28 U.S.C.A. § 1652.

**[2] Federal Courts ⚫381**  
170Bk381 Most Cited Cases  
No ouster of federal jurisdiction results when, by reason of the policies expressed in the *Erie* doctrine, a federal court requires that a state's rule barring an action from proceeding in its courts must be applied to bar the action from the federal court. M.G.L.A. c. 231, § 60B; 28 U.S.C.A. § 1652.

**[3] Health ⚫806**  
198Hk806 Most Cited Cases  
(Formerly 299k17.5 Physicians and Surgeons)  
Requiring malpractice actions brought in the federal court to be heard first by a tribunal operating as an adjunct of the state superior court does not deprive out-of-state litigants of the benefit of federal diversity jurisdiction. M.G.L.A. c. 231, § 60B; 28 U.S.C.A. § 1652.

**[4] Federal Courts ⚫431**  
170Bk431 Most Cited Cases  
The constraints imposed on a plaintiff under Massachusetts statute by the necessity of either prevailing before the tribunal or filing a bond for the defendant's costs and attorney's fees are state-created limitations on the plaintiff's right to recover that a federal court must apply in diversity actions. M.G.L.A. c. 231, § 60B; 28 U.S.C.A. § 1652.

**[5] Federal Courts ⚫428**  
170Bk428 Most Cited Cases  
(Formerly 299k17.5 Physicians and Surgeons)  
Provision of Massachusetts statutes regarding admissibility at trial of malpractice tribunal's determination is not so intertwined with other provisions that a state or federal court would decline to apply screening procedure and bond requirement if it held that, because of distinctive nature of tribunal's determination, tribunal's decision was inadmissible at trial. M.G.L.A. c. 231, § 60B; 28 U.S.C.A. § 1652.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

643 F.2d 880
643 F.2d 880
(Cite as: 643 F.2d 880)

FOR EDUCATIONAL USE ONLY

Page 2

**[6] Federal Courts 431**
170Bk431 Most Cited Cases
Federal interest in ensuring uniformity of outcome by applying state rule in malpractice actions brought in federal court far outweighed any burden imposed by bond requirement on right to trial by jury in federal court. 28 U.S.C.A. § 1652.

**[7] Health 806**
198Hk806 Most Cited Cases
(Formerly 299k17.5 Physicians and Surgeons)
Presence of a physician and an attorney on each malpractice tribunal in Massachusetts does not deprive plaintiffs, particularly those from out of state, of an impartial forum. 28 U.S.C.A. § 1652.

*881 Richard J. Chin, Brockton, Mass., with whom Albert E. Grady, Brockton, Mass., was on brief, for plaintiff, appellant.

Joseph L. Doherty, Jr., Medford, Mass., with whom Raymond J. Kenney, Jr. and Martin, Magnuson, McCarthy and Kenney, Boston, Mass., were on brief, for defendant-appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and KEETON, District Judge. [FN*]

> FN* Of the District of Massachusetts, sitting by designation.

KEETON, District Judge.

This appeal turns on whether the Rules of Decision Act, 28 U.S.C. s 1652, and the doctrine announced in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), require the federal courts to apply certain provisions of the Massachusetts medical malpractice statute, Mass.Gen.Laws ch. 231, s 60B, in medical malpractice actions in which federal jurisdiction is based solely on the diversity of citizenship of the parties. Before stating the issues more precisely, we outline the facts of the case and briefly describe Massachusetts' procedure for screening malpractice actions brought against providers of health care.

I.

The plaintiff, a citizen of Rhode Island, brought this personal injury action in April 1979, alleging that he contracted hepatitis as a result of receiving a transfusion of contaminated blood due to the negligence of the defendant, Massachusetts General Hospital. Defendant moved to refer the case for a hearing before a medical malpractice tribunal pursuant to Mass.Gen.Laws ch. 231, s 60B, which requires "(e)very action for malpractice, error or mistake against a provider of health care" to be heard "within fifteen days after the defendant's answer has been filed" by a tribunal consisting of a single justice of the Superior Court, and a physician [FN1] and an attorney authorized to practice in the Commonwealth. The physician and attorney are selected by the single justice from lists prepared by the Massachusetts Medical Society and the Massachusetts Bar Association.

> FN1. "Where the action of malpractice is brought against a provider of health care not a physician," section 60B provides that, in lieu of a physician, one member of the tribunal shall be "a representative of that field of medicine in which the alleged tort or breach of contract occurred, as selected by the superior court justice in a manner he determines fair and equitable."

At the hearing before the malpractice tribunal, the plaintiff is required to make an "offer of proof" of the evidence supporting his or her claim. Section 60B offers examples of admissible evidence [FN2] and authorizes the tribunal to subpoena witnesses or records for either party or on its own motion. After presentation of the evidence, the tribunal must determine whether "the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry *882 or whether the plaintiff's case is merely an unfortunate medical result." Mass.Gen.Laws ch. 231, s 60B. The Massachusetts Supreme Judicial Court has ruled that the tribunal's function is "to evaluate (the evidence offered by the plaintiff) in the manner in which a judge presiding at a civil trial would do 'in ruling on a defendant's motion for directed verdict,' " McMahon v. Glixman, Mass.Adv.Sh. (1979) 2277, 2284, --- Mass. ---, ---, 393 N.E.2d 875, 879, quoting Little v. Rosenthal, Mass.Adv.Sh. (1978) 2793, 2798-99, 376 Mass. 573, ---, 382 N.E.2d 1037, 1041. The statute declares that the tribunal's determination is admissible as evidence at trial.[FN3]

> FN2. Admissible evidence shall include,

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

but not be limited to, hospital and medical records, nurses' notes, x-rays and other records kept in the usual course of the practice of the health care provider ..., statements of fact or opinion on a subject contained in a published treatise, periodical, book or pamphlet or statements by experts without the necessity of such experts appearing at the hearing.
Mass.Gen.Laws ch. 231, s 60B.

FN3. As yet no reported Massachusetts decision has considered how, and under what circumstances, the tribunal's determination may be received in evidence at trial in a state court. See part IV-B(1), infra.

If the tribunal finds for the defendant, section 60B requires a plaintiff wishing to pursue the action through the "usual judicial process" to file a two thousand dollar bond with the clerk of court. The bond is payable to the defendant for costs assessed, including witness and expert's fees and attorney's fees, "if the plaintiff does not prevail in the final judgment." Exercising discretion, the single justice may increase the bond, or, upon motion filed by the plaintiff and after determining that the plaintiff is indigent, may reduce it, but may not eliminate the bond requirement completely. If the bond is not posted within thirty days of the tribunal's finding for the defendant, section 60B requires that the action "shall be dismissed." See Goldstein v. Barron, Mass.Adv.Sh. (1980) 2567, --- Mass. ---, ---, 414 N.E.2d 998; Austin v. Boston University Hospital, 372 Mass. 654, 661, 363 N.E.2d 515, 519 (1977).

In support of its motion to refer the case to the medical malpractice tribunal, defendant argued that the Massachusetts medical malpractice statute constitutes a substantive rule of law that under Erie Railroad v. Tompkins, supra, must be applied by a federal court exercising its diversity jurisdiction. Plaintiff opposed the motion, arguing that referral would defeat the purposes of diversity jurisdiction. Finding "that the Massachusetts statute imposes substantive requirements to be applied in federal court under Erie and Hanna v. Plumer," 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the district court allowed the motion to refer the action to the Superior Court for a section 60B hearing.

[FN4] 489 F.Supp. 419, 421 (D.Mass.1979). Accord, Byrnes v. Kirby, 453 F.Supp. 1014, 1019 (D.Mass.1978).

FN4. In response to questions certified by a federal district judge, the Massachusetts Supreme Judicial Court ruled in Austin v. Boston Univ. Hosp., supra, that
if it is determined that a tribunal should pass on a particular medical malpractice action brought in a Federal court, that the Federal court should not fashion its own tribunal, and that it is appropriate that a tribunal appointed by the Superior Court express its views on the case, a s 60B tribunal will be appointed and act on the matter, after which its findings will be transmitted to the clerk of the Federal court.
Id., 372 Mass. at 660, 363 N.E.2d at 519.

A medical malpractice tribunal was convened on December 5, 1979 at the Suffolk Superior Court. After hearing, on December 7, 1979 the tribunal ruled that plaintiff's evidence, if properly substantiated, was insufficient to raise a legitimate question of liability appropriate for judicial inquiry. On January 21, 1980, defendant filed a motion to dismiss the action on the grounds that plaintiff failed to post the bond required by section 60B within thirty days of the tribunal's decision. Plaintiff opposed the motion, reasserting his argument that referral undercuts the purposes of diversity jurisdiction. At a hearing on April 14, 1980, the district court allowed the motion to dismiss and directed the entry of judgment for the defendant, from which plaintiff now appeals.

We note that plaintiff has not argued, either in the district court or on appeal, that the trial court, or this court, should examine the record of the hearing before the medical malpractice tribunal and review its determination that the evidence before it was insufficient to raise a legitimate question of *883 liability.[FN5] Neither has plaintiff argued that he is indigent and therefore unable to afford the two thousand dollar bond normally required by section 60B. [FN6] Thus, those issues are not before us, and we are presented with but two questions: whether the Rules of Decision Act, 28 U.S.C. s 1652, and the Erie doctrine require a federal district

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

643 F.2d 880
643 F.2d 880
(Cite as: 643 F.2d 880)

FOR EDUCATIONAL USE ONLY

Page 4

court sitting in diversity to refer "an action for malpractice, error or mistake against a provider of health care" arising under Massachusetts law to a medical malpractice tribunal convened pursuant to Mass.Gen.Laws ch. 231, s 60B, and, if so, whether the district court must dismiss the action when, after hearing, the tribunal determines that the plaintiff's evidence is insufficient to raise a legitimate claim of liability and the plaintiff fails to file a bond within thirty days as required by section 60B. As we agree with the district court that both questions must be answered yes, we affirm.

> FN5. In the Massachusetts state courts, a plaintiff who suffers an adverse judgment after failing to file the required bond may obtain immediate appellate review of the sufficiency of the evidence before the malpractice tribunal. In obtaining review in this way, however, rather than seeking appellate review only after a trial on the merits, plaintiff "runs the risk of being out of court entirely if his claim of error by the tribunal is decided adversely to him...." McMahon v. Glixman, supra, Mass.Adv.Sh. (1979) ---, Mass. at ---, 2281, 393 N.E.2d at 878. See n.15, infra.

> FN6. In the state courts, a motion to reduce the amount of the bond may be heard by the Superior Court justice who sat on the panel. See Gugino v. Harvard Community Health Plan, Mass.Adv.Sh. (1980) 1037, 1042, ---Mass. ---, ---, 403 N.E.2d 1166, 1169 (1980). A plaintiff who fails to file a bond has a right to appellate review after dismissal "on the issue whether there was abuse of discretion in a failure to reduce the required bond appropriately, on proof of the plaintiff's indigency." Kapp v. Ballantine, supra, Mass.Adv.Sh. (1980) 755, 758, --- Mass. ---, ---, 402 N.E.2d 463, 467. See n.15, infra.

II.

The Rules of Decision Act provides that "(t)he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. s 1652. In a long and oft-cited line of cases beginning with Erie Railroad v. Tompkins, supra, the Supreme Court has stated the principles to be applied in determining whether a federal court sitting in diversity must apply a particular rule of state law.

In Erie, the Court held that "laws of the several states" as used in section 34 of the Federal Judiciary Act of September 24, 1789, the predecessor of 28 U.S.C. s 1652, include laws articulated in state court decisions, as well as those contained in state constitutions and statutes. In so doing, the Court overruled Swift v. Tyson, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), which it found had "introduced grave discrimination by non-citizens against citizens," 304 U.S. at 74, 58 S.Ct. at 820, because the common law rules of liability affecting a party varied "according to whether enforcement was sought in the state or in the federal court; and the privilege of selecting the court in which the right should be determined was conferred upon the non-citizen." Id. at 74-75, 58 S.Ct. at 820 (footnote omitted).

The first major elaboration upon the Erie principle came in Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), in which the Court turned aside respondent's argument that in a suit in equity to recover on a state-created right, a federal court sitting in diversity should not apply the state's statute of limitations because it was "procedural," not "substantive."

> (T)he question is not whether a statute of limitations is deemed a matter of "procedure" in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, does it significantly affect the result of a litigation for a federal *884 court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court? ... In essence, the intent of (the Erie) decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

643 F.2d 880
643 F.2d 880
(Cite as: 643 F.2d 880)

FOR EDUCATIONAL USE ONLY

Page 5

parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.
Id. at 109, 65 S.Ct. at 1469.

Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), pursued a mode of analysis different from the "outcome-determinative" test articulated in Guaranty Trust. At issue in Byrd was whether a federal district court sitting in diversity was required to apply a South Carolina rule requiring the judge, rather than the jury, to decide factual issues relating to an employer's immunity under the state's Workmen's Compensation Act. The Court first examined the origins of the South Carolina rule and concluded that it was "merely a form and mode of enforcing the immunity, and not a rule intended to be bound up with the definition of the rights and obligations of the parties." Id. at 536, 78 S.Ct. at 900 (citation omitted). However, the Court did not treat that conclusion as the end of its inquiry into whether Erie required application of the state rule. Instead, the Court declared that

> cases following Erie have evinced a broader policy to the effect that the federal courts should conform as near as may be in the absence of other considerations to state rules even of form and mode where the state rules may bear substantially on the question whether the litigation would come out one way in the federal court and another way in the state court if the federal court failed to apply a particular local rule.

Id. at 536-37, 78 S.Ct. at 900 (footnote omitted). Then, noting that there were "affirmative countervailing considerations at work," the Court observed:

> The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction. An essential characteristic of that system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury, and under the influence if not the command of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury.

Id. at 537, 78 S.Ct. at 900. (Weighing "the federal policy favoring jury decisions of disputed fact questions" against "the interest of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court," id. at 538, 78 S.Ct. at 901, the Court determined that "the likelihood of a different result is (not) so strong as to require the federal practice of jury determination of disputed factual issues to yield to the state rule in the interest of uniformity of outcome." Id. at 540, 78 S.Ct. at 902 (citations omitted).

The Supreme Court's last major pronouncement on the Erie doctrine came in Hanna v. Plumer, supra, in which the Court held that the manner of service of process in a diversity action is governed by the Federal Rules of Civil Procedure, not state law. In so doing, the Court rejected the defendant's argument that because the plaintiff had failed to comply with Massachusetts' requirement that an executor receive actual notice of claims filed by a creditor of the deceased, a federal court sitting in diversity was required to apply the state rule rather than Rule 4(d)(1), because application of the Massachusetts rule would determine the outcome of the litigation. Declaring that "'(o)utcome-determination' analysis was never intended to serve as a talisman," id. at 466-67, 85 S.Ct. at 1141, the Court concluded that the test articulated in Guaranty Trust "cannot be read without reference to the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." Id. at 468, 85 S.Ct. at 1142 (footnote omitted).

*885 Before addressing the specific contentions raised by the appellant, we examine the Massachusetts medical malpractice statute in light of the principles developed in Erie and its progeny.

### III.

Mass.Gen.Laws chapter 231, section 60B was enacted during a nationwide "medical malpractice insurance crisis" in which a dramatic increase in the volume and amount of malpractice claims and awards caused insurance rates for physicians to surge and made malpractice coverage very difficult for many doctors to obtain. See Redish, Legislative Response to the Medical Malpractice Insurance Crisis: Constitutional Implications, 55 Tex.L.Rev. 759, 759-63 (1977); Comment, An Analysis of State Legislative Responses to the Medical Malpractice Crisis, 1975 Duke L.J. 1417.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

643 F.2d 880                     FOR EDUCATIONAL USE ONLY                              Page 6
643 F.2d 880
(Cite as: 643 F.2d 880)

According to the Supreme Judicial Court, the statute was adopted "to discourage frivolous claims whose defense would tend to increase premium charges for medical malpractice insurance," Austin v. Boston Univ. Hosp., supra, 372 Mass. at 655 n.4, 363 N.E.2d at 516 n.4, "as part of a comprehensive package designed to ensure the continued availability of medical malpractice insurance at a reasonable cost." Paro v. Longwood Hospital, 373 Mass. 645, 647, 369 N.E.2d 985, 987 (1977).

[1] The statute's referral procedure and associated provisions were designed to serve these substantive policy objectives by providing for a prompt determination of the likely merits of a claim and requiring that a plaintiff who is unsuccessful before the malpractice tribunal post a bond to cover the defendant's costs and attorney's fees in the event he or she "does not prevail in the final judgment." Mass.Gen.Laws ch. 231, s 60B. Thus, the procedures set forth in section 60B are more than simply a "form and mode" of regulating litigation in the state courts. In the absence of any overriding federal interest in not applying the statute, see part IV, infra, we conclude that the Rules of Decision Act requires the federal courts to apply the state rules at issue here. This conclusion is supported by numerous decisions regarding other states' malpractice tribunals [FN7] and by the principles articulated by the Supreme Court in Erie and its descendants.

> FN7. With the single exception of Wheeler v. Shoemaker, 78 F.R.D. 218 (D.R.I.1978), discussed in part IV, infra, every court that has considered the question has concluded that the Erie doctrine requires a federal court sitting in diversity to apply a state statute requiring referral of a medical malpractice action to a state-created arbitration panel or hearing tribunal. DeAntonio v. Northampton-Accomack Memorial Hosp., 628 F.2d 287 (4th Cir. 1980); Davison v. Sinai Hosp. of Baltimore, Inc., 617 F.2d 361 (4th Cir. 1980), aff'g 462 F.Supp. 778 (D.Md.1978); Edelson v. Soricelli, 610 F.2d 131 (3d Cir. 1979); Stoner v. Presbyterian Univ. Hosp., 609 F.2d 109 (3d Cir. 1979); Hines v. Elkhart Gen. Hosp., 603 F.2d 646 (7th Cir. 1979); Woods v. Holy Cross Hosp., 591 F.2d 1164 (5th Cir. 1979); Seone v. Ortho Pharmaceutical, Inc., 472 F.Supp. 468 (E.D.La.1979); Byrnes v. Kirby, supra; Wells v. McCarthy, 432 F.Supp. 688 (E.D.Mo.1977); Marquez v. Hahnemann Medical College & Hosp., 435 F.Supp. 972 (E.D.Pa.1976); Flotemersch v. Bedford County Gen. Hosp., 69 F.R.D. 556 (E.D.Tenn.1975).

Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), is closely analogous to the instant case. In Cohen, the Supreme Court addressed the question

> whether a federal court, having jurisdiction of a stockholder's derivative action only because the parties are of diverse citizenship, must apply a statute of the forum state which makes the plaintiff, if unsuccessful, liable for the reasonable expenses, including attorney's fees, of the defense and entitles the corporation to require security for their payment.

Id. at 543, 69 S.Ct. at 1224. The Court rejected plaintiff's argument that the statute at issue was "procedural," and therefore not required to be applied in the federal court.

> (T)his statute is not merely a regulation of procedure. With it or without it the main action takes the same course. However, it creates a new liability where none existed before, for it makes a stockholder who institutes a derivative action liable for the expense to which he puts the *886 corporation and other defendants, if he does not make good his claims. Such liability is not usual and it goes beyond payment of what we know as "costs." If all the Act did was to create this liability, it would clearly be substantive. But this new liability would be without meaning and value in many cases if it resulted in nothing but a judgment for expenses at or after the end of the case. Therefore, a procedure is prescribed by which the liability is insured by entitling the corporate defendant to a bond of indemnity before the outlay is incurred. We do not think a statute which so conditions the stockholder's action can be disregarded by the federal court as a mere procedural device.

Id. at 555-56, 69 S.Ct. at 1229-1230.

Like the statute at issue in Cohen, section 60B

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

643 F.2d 880
643 F.2d 880
(Cite as: 643 F.2d 880)

FOR EDUCATIONAL USE ONLY

Page 7

creates a new liability in the amount of the bond for costs and reasonable attorneys' fees incurred by a defendant in a case in which the plaintiff fails to obtain a judgment. However, rather than requiring every plaintiff bringing a malpractice action to risk that liability, the Massachusetts statute requires only that a plaintiff who fails to make a prima facie showing of a legitimate claim of liability at the hearing before the malpractice tribunal file such a bond. This difference in the procedure by which the statutory liability is determined should not lead to a different result. Despite this difference, each of the policies underlying the Erie rule mandates application of section 60B in federal court. [FN8]

> FN8. The question whether, and if so, in what circumstances, the weighing test articulated in Byrd should be applied in post-Hanna cases has provoked a great deal of critical commentary. See, e. g., Ely, The Irrepressible Myth of Erie, 87 Harv.L.Rev. 698, 717 n.130 (1974); Redish & Phillips, Erie and the Rules of Decision Act: In Search of the Appropriate Dilemma, 91 Harv.L.Rev. 356, 372 (1977). However, because we conclude that requiring the federal courts to apply the referral procedure and bond requirement mandated by section 60B is consistent with the Court's opinions in both these cases, we need not consider whether Byrd and Hanna can or cannot be reconciled.

Requiring that a malpractice action be referred for a hearing before a section 60B tribunal may have a significant effect on the outcome of the litigation. Cf. Bernhardt v. Polygraphic Co., 350 U.S. 198, 203, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1956) (declining to require enforcement of contractual arbitration clause in diversity action where state law would not do so because "the remedy by arbitration ... substantially affects the cause of action created by the State ... The change from a court of law to an arbitration panel may make a radical difference in ultimate result"). Failing to apply the requirements of section 60B in malpractice actions brought in the federal court would encourage forum-shopping by out-of-state plaintiffs (or Massachusetts plaintiffs suing out-of-state defendants on Massachusetts malpractice claims) wishing to avoid the screening procedure mandated in the Massachusetts courts.

Byrnes v. Kirby, supra, 453 F.Supp. at 1019. Cf. Hanna v. Plumer, supra, 380 U.S. at 469 n.10, 85 S.Ct. at 1142, n.10 (federal court's refusal to enforce the bonding requirement at issue in Cohen might influence stockholder's choice of forum). It would result in inequitable administration of the law by compelling a defendant sued in federal court to forego the procedural protection and substantive right to recovery of costs afforded by section 60B "solely because of the fortuity that there is diversity of citizenship between the litigants." Walker v. Armco Steel Corp., 446 U.S. 740, 753, 100 S.Ct. 1978, 1986 (1980) (Oklahoma statute tolling the period of limitation on date of service, or on date of filing if service is within 60 days of filing, must be applied in diversity action in federal court).

Finally, because they are aimed at affecting not only the adjudication of claims but also the availability of medical malpractice insurance, the referral procedure and bond requirement constitute state rules designed to have an impact on personal activity beyond the adjudicative process.[FN9] Accepting *887 as a premise the policy determination made in the Massachusetts legislation, we conclude that refusing to apply the Massachusetts medical malpractice statute in the federal courts would undercut Massachusetts' efforts to remedy the insurance crisis that prompted passage of the statute, a result that is inconsistent with the principles of federalism underlying the Rules of Decision Act and the Erie decision. Erie Railroad v. Tompkins, supra, 304 U.S. at 78-80, 58 S.Ct. at 822-823. See Redish & Phillips, supra, at 360; Ely, supra, at 708-09 n.86, 716 n.126.

> FN9. To Justice Harlan, the substantial impact of a state rule "on private primary activity," was alone sufficient to justify its application in the federal courts, see Hanna v. Plumer, supra, 380 U.S. at 477, 85 S.Ct. at 1147 (Harlan, J., concurring). Although not accepting Justice Harlan's position, the Court's opinion in Hanna indicates that the Erie doctrine is premised upon the healthy respect for determinations made by the states on matters of substance that is implicit in our federalism. Id. at 465, 471, 85 S.Ct. at 1140, 1143.

IV.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=A00558000000... 12/21/04

Relying primarily on Wheeler v. Shoemaker, supra, plaintiff makes three arguments against referring a malpractice action brought in federal court to a tribunal convened pursuant to section 60B. We discuss each in turn.

A.

Plaintiff's first contention is that requiring malpractice actions brought in the federal court to be heard first by a tribunal operating as an adjunct of the state superior court would deprive out-of-state litigants of the benefit of federal diversity jurisdiction. In Wheeler, the district court denied a motion to refer a malpractice action to a medical mediation panel convened pursuant to the Rhode Island Medical Malpractice Act, R.I.Gen.Laws ss 10-19- 1 et seq. [FN10] Finding that "(t)he panel operates essentially as an adjunct of the superior courts," Wheeler v. Shoemaker, supra, 78 F.R.D. at 219, the court concluded

> FN10. Like section 60B, the Rhode Island statute requires that every malpractice action against a health care provider must be heard soon after filing by a "medical liability mediation panel." R.I.Gen.Laws ss 10-19-1, 2. The Rhode Island panel also includes an attorney and a physician. It is chaired by a special master selected by the Presiding Justice of the Superior Court, however. The Massachusetts tribunal is chaired by a Superior Court justice.
> The most significant difference between the two is that the Rhode Island statute provides for more extensive hearings and findings than does section 60B. The Rhode Island panel conducts a full hearing governed by the state's rules of evidence on the issues of liability and damages. After hearing, the panel makes "all necessary findings of fact and conclusions of law in respect to liability and proximate cause," issues a written decision stating its reasons, and in the event it makes a finding of liability, makes a complete award on damages. ss 10-19-6, 7.
> The panel's findings on liability, as well as a minority opinion if the decision was not unanimous, are admissible at trial. s 10-19-8. They are conclusive unless a party rejects them within thirty days of receiving notice of the panel's ruling. A party wishing to reject the panel's findings and proceed to trial may do so without filing a bond, but if, after trial, the court finds that the party rejected the panel's finding "without a reasonable probability of success on the merits, or a good faith belief therein," it may require the rejecting party to pay the costs and attorney's fees of its opponent. s 10-19-9.
> As is apparent from our opinion, we consider some of the reasoning in Wheeler inconsistent with the views we express herein. However, we do not now determine whether provisions of the Rhode Island statute are to be applied in the federal courts.

that reference to the panel so established amounts to little more than furnishing the state court an opportunity to pass upon the claim initially. To refer the action to a panel appointed by the state court, therefore, is contrary to the congressional grant of diversity jurisdiction.

Id. at 221. The district court rested this basis for its holding on Railway Co. v. Whitton's Administrator, 80 U.S. (13 Wall.) 270, 20 L.Ed. 571 (1871), in which the Supreme Court held that Wisconsin could not limit enforcement of a state-created cause of action for wrongful death to its own courts. See also Terral v. Burke Construction Co., 257 U.S. 529, 532, 42 S.Ct. 188, 188, 66 L.Ed. 352 (1922) (holding unconstitutional an Arkansas statute causing a foreign corporation to lose its license to do business within the state if, either through filing an action or through removal, it invoked the diversity jurisdiction of the federal courts):

> (T)he Federal Constitution confers upon citizens of one State the right to resort to *888 federal courts in another ... (S)tate action, whether legislative or executive, necessarily calculated to curtail the free exercise of that right thus secured is void....

[2][3] We conclude, however, that the rule of Whitton is inapposite. As one leading commentary observes:

> Whitton (and) Terral ... involved statutes claimed to operate of their own force, having the direct

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11813-JLT    Document 5    Filed 12/22/2004    Page 13 of 15    Page 10 of 12

643 F.2d 880  
643 F.2d 880  
(Cite as: 643 F.2d 880)

FOR EDUCATIONAL USE ONLY

Page 9

and single aim of confining litigation to state courts. Different considerations are involved when the claim of limitation is based initially on a federal statute referring to state law, such as the Rules of Decision Act, and when the question is simply whether a state statute admittedly applicable in the state courts should be given the same application in the federal courts.

P. Bator, P. Mishkin, D. Shapiro and H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 690 (2d ed. 1973). Neither section 60B nor the Rhode Island statute at issue in Wheeler attempts to confine medical malpractice actions to the state courts. Rather, each creates a screening mechanism through which every malpractice claim must proceed before being pursued in court. No ouster of federal jurisdiction results when, by reason of the policies expressed in Erie, a federal court requires that a state's rule barring an action from proceeding in its courts must be applied to bar the action from the federal court. This principle is exemplified by Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1073 (1949), in which the Supreme Court held that a federal court sitting in diversity must apply a state door-closing statute barring an unregistered foreign corporation from bringing suit in the state courts and dismissing an action brought by a foreign corporation in the federal court. In Woods, the Court observed

> The York case was premised on the theory that a right which local law creates but which it does not supply with a remedy is no right at all for purposes of enforcement in a federal court in a diversity case; that where in such cases one is barred from recovery in the state court, he should likewise be barred in the federal court. The contrary result would create discriminations against citizens of the State in favor of those authorized to invoke the diversity jurisdiction of the federal courts. It was that element of discrimination that Erie R. Co. v. Tompkins was designed to eliminate.

Id. at 538, 69 S.Ct. at 1237.

[4] In light of Woods, and our holding that a medical malpractice tribunal operating as an adjunct of the state courts is not inherently unfair to out-of-state plaintiffs, see part IV-C, infra, we conclude that the constraints imposed on a plaintiff by the necessity of either prevailing before the tribunal or filing a bond for the defendant's costs and attorney's fees are state-created limitations on the plaintiff's right of recovery that a federal court must apply in diversity actions.[FN11] Cf. Guaranty Trust v. York, supra (federal court must apply state's statute of limitations in state-created cause of action brought under diversity jurisdiction).

> FN11. We note that requiring medical malpractice claims filed in the federal court to be referred to a malpractice tribunal identical to that mandated by section 60B, but appointed and chaired by a judge of the federal district court, would give the federal courts greater control over actions brought within their diversity jurisdiction. See Wheeler v. Shoemaker, supra, 78 F.R.D. at 223-29. However, the interest of comity and the efficient administration of justice will best be served by avoiding the duplication of administrative arrangements necessitated by such a requirement.

B.

Plaintiff next argues that requiring referral of medical malpractice actions from the federal court to a tribunal convened pursuant to section 60B will alter the role of the jury in the federal system in a manner proscribed by Byrd v. Blue Ridge Cooperative, supra.

(1)

[5] In examining this contention, we note first that the question whether a federal *889 court is required to apply Massachusetts' rule regarding the admissibility at trial of the malpractice tribunal's determination is not before us on the facts of this case. Nevertheless, if the various provisions of section 60B are so intertwined that in interpreting the Massachusetts legislature's intent, a state or federal court would decline to apply the screening procedure and bond requirement if it held that because of the distinctive nature of the tribunal's determination,[FN12] the tribunal's decision is inadmissible at trial, we would be required to address the issue whether the tribunal's determination is admissible in the federal courts. We conclude, however, that the provision on

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

643 F.2d 880
643 F.2d 880
(Cite as: 643 F.2d 880)

FOR EDUCATIONAL USE ONLY

Page 10

admissibility is not so intertwined with the other provisions of section 60B.

> FN12. See p. 882, supra.

Section 14 of the statute enacting section 60B declared: "The provisions of this act are severable and if any of its provisions shall be held unconstitutional by any court of competent jurisdiction the decision of such court shall not impair any of the remaining sections." St. 1975, c. 362, s 14. Although this case does not present a question of "severability" in the classic sense, i. e., whether the remaining portions of the statute should be enforced after a particular provision is held unconstitutional, we conclude that the issue presented by the instant case is so closely analogous to a question of severability that we should apply the principle expressed in the directive of the Massachusetts legislature.[FN13] Thus, the question whether a federal court is required to admit a malpractice tribunal's determination into evidence at trial will be reserved for another day.

> FN13. Although we note that section 14 states that none of "the remaining sections" (emphasis supplied) of the act shall be impaired if any provision is held unconstitutional, and all of section 60B is included in section 5 of the act, we interpret the severability provision to limit the effects of a decision barring the enforcement of a particular statutory provision. Thus, we conclude, consistently with its manifest purpose, that section 14 should not be narrowly confined to requiring entire sections or nothing to be treated as severable.

(2)

We turn next to the question whether a fatal conflict exists between the federal right to trial by jury and the state rule requiring that a plaintiff who obtains an adverse determination from a malpractice tribunal must file a bond before further proceedings may occur. Unlike the South Carolina rule at issue in Byrd, which required the judge to decide questions of fact concerning an employer's immunity under the state workmen's compensation law, the bond requirement in section 60B does not affect the distribution of "trial functions between judge and jury," 356 U.S. at 537, 78 S.Ct. at 900. Instead, like a statute of limitations, see Guaranty Trust Co. v. York, supra, or a door-closing statute, see Woods v. Interstate Realty Co., supra, the bond requirement reflects a state's determination, on a matter "intended to be bound up with the definition of the rights and obligations of the parties," Byrd, supra, 356 U.S. at 536, 78 S.Ct. at 900, that in particular circumstances its courts should not be open to certain actions. Because enforcing the bond requirement may have a substantial effect on the outcome of litigation and will serve the "twin policies of the Erie rule," see part III, supra, the Rules of Decision Act requires the federal courts to apply the provision unless it either contradicts a federal rule of civil procedure, Hanna v. Plumer, supra, or interferes with a constitutionally protected interest, Byrd v. Blue Ridge Cooperative, supra.

[6] Plaintiff has not alleged that he is indigent and therefore unable to file the bond required by section 60B. Therefore, his contention that application of section 60B by the federal courts interferes with the role of the jury in the federal system hinges upon the assertion that the $2000 bond requirement constitutes, as a matter of law, an impermissible barrier to the right to trial by jury afforded by the Seventh Amendment. We agree with the Supreme Judicial Court that the requirement that a $2000 bond be filed "is not unreasonably *890 burdensome for nonindigent plaintiffs whose claims have already been the subject of adverse findings by the statutory tribunals." Paro v. Longwood Hosp., supra, 373 Mass. at 653-54, 369 N.E.2d at 990 (holding, inter alia, that the bond requirement of section 60B does not violate the right to a jury trial guaranteed by the Massachusetts Declaration of Rights). Therefore, applying the weighing approach prescribed by Byrd, we conclude that the federal [FN14] interest in ensuring uniformity of outcome by applying the state rule in malpractice actions brought in federal courts far outweighs any burden imposed by the bond requirement on the right to trial by jury in federal court.

> FN14. Although the point is a narrow one probably deserving little attention, we note that Byrd speaks not of weighing federal interests against state interests, as many comments on Byrd have spoken, but of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

643 F.2d 880
643 F.2d 880
(Cite as: 643 F.2d 880)

FOR EDUCATIONAL USE ONLY

Page 11

weighing the federal interest favoring jury decisions of disputed facts against "the interest of furthering the objective that the litigation should not come out one way in the federal court and another way in the state court." 356 U.S. at 538, 78 S.Ct. at 901. This latter interest is also a federal interest an interest implicit in federalism. Of course, state interests will be served by achieving uniformity of outcome, even though doing so in the name of federalism.

### C.

Finally, appellant argues that the presence of a physician and an attorney on each malpractice tribunal deprives plaintiffs, particularly those from out-of-state, of an impartial forum. See Wheeler v. Shoemaker, supra, 78 F.R.D. 222-23, 229. To accept this contention the court must conclude that the composition of the malpractice tribunal required by section 60B is inherently unfair to out-of-state plaintiffs.

Under section 60B, several institutional safeguards operate to protect a plaintiff against possible bias on the part of a tribunal member. First, the tribunal is chaired by a justice of the Superior Court. Second, the physician serving on the panel is selected by the single justice from a list submitted by the Massachusetts Medical Society consisting "only of physicians who practice medicine outside the county where the defendant practices or resides or if the defendant is a medical institution or facility outside the county where said institution or facility is located." Mass.Gen.Laws ch. 231, s 60B. Finally, as noted above, a plaintiff wishing to challenge an adverse determination may do so, both in the trial court and on appeal.[FN15]

> FN15. See notes 5 and 6, supra. In the state courts, a party need not file a motion to set aside a malpractice tribunal's determination before the trial judge to obtain appellate review of the tribunal's decision. See Gugino v. Harvard Community Health Plan, supra. This rule may have developed, however, because a justice of the Superior Court presides over the tribunal. We need not and do not now determine the procedure for challenging a tribunal's decision after referral by a federal court, but we note that the usual rule in the federal courts is that an issue cannot be raised on appeal unless it has been first presented to the district court. See, e. g., Johnston v. Holiday Inns, Inc., 595 F.2d 890, 894 (1st Cir. 1979).

[7] In light of these safeguards, we cannot accept plaintiff's contention that referring malpractice actions brought in the federal court to a tribunal convened pursuant to section 60B is inherently unfair to out-of-state plaintiffs.

Affirmed.

643 F.2d 880

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=A00558000000...    12/21/04